952 So.2d 42 (2006)
Laura GUILLOT, Individually & as Legal Representative for May Guillot
v.
LECC-BATON ROUGE INC., Louisiana Extended Care Centers, Inc., Landmark of Baton Rouge, L.L.P., & Does One Through Twenty.
No. 2005 CA 2537.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
Jack W. Harang, Mobile, AL, Counsel for Plaintiff/Appellant Laura Guillot, individually & as legal representative for May Guillot.
*43 C. Blair Bright, New Orleans, Counsel for Defendants/Appellees LECC-Baton Rouge, Inc., Louisiana Extended Care Centers, Inc. & Landmark of Baton Rouge, LLP.
Before: PETTIGREW, DOWNING and HUGHES, JJ.
DOWNING, J.
In this medical malpractice case the trial court sustained an exception of prescription filed by LECC-Baton Rouge Inc., Louisiana Extended Care Centers, Inc.[1] (Landmark). The trial court then entered judgment dismissing the suit filed by Laura Guillot, individually and as legal representative of May Guillot (Guillot). Ms. Guillot appeals the judgment dismissing her suit. For the following reasons we reverse.
Louisiana Revised Statute 9:5628 provides that a claim for medical malpractice must be brought within one year of the alleged act or occurrence. La. R.S. 40:1299.47 provides that a claim filed with the Patients' Compensation Fund (PCF) suspends the running of prescription.
Louisiana Revised Statute 40:1299.47(A)(2)(a) states in pertinent part:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, . . . to the claimant or his attorney of the issuance of the opinion by the medical review panel. . . .
The issue presented herein is when the plaintiff was effectively notified that the Medical Review Panel had rendered its opinion. Specifically, resolution of this issue depends on whether a UPS postal store employee was a putative mandatory authorized to accept service on behalf of Ms. Guillot.
The essential facts are as follows. On October 14, 2000, May Guillot became a long-term care resident of Landmark. On October 22, 2001, after suffering a fall, she was admitted to a rehabilitation facility. Ms. Guillot was officially discharged from Landmark on October 31, 2001. On September 27, 2002, Ms. Guillot's attorney, Briana Rivera, who was licensed in both Louisiana and California, filed a malpractice claim against Landmark with the PCF. Ms. Rivera used her California address when originally filing the claim but later associated with Jack W. Harang, an attorney in Louisiana. On January 27, 2004, several months before the panel decision was rendered, Mr. Harang sent a letter informing the PCF that he now represented Ms. Guillot. The letter also requested all correspondence to be mailed to him at his address in Mandeville, Louisiana.[2]
On April 16, 2004, John Wellman, the PCF attorney, sent a certified letter informing all parties that the Medical Review Panel had rendered its decision. However, instead of mailing a copy of the decision to Mr. Harang's address in Louisiana, the correspondence was only sent to Ms. Rivera in California.
In the meantime, due to medical reasons, Ms. Rivera closed her office in California and had her mail forwarded to a UPS post office box. On April 24, 2004 the PCF certified letter addressed to Ms. Rivera arrived at the UPS post office. However, instead of placing a notice in Ms. Rivera's post office box that the post office *44 had a certified parcel for her, the postal clerk signed for the certified parcel. On May 10, 2004, Ms. Rivera picked up the certified parcel and immediately forwarded the decision to Mr. Harang in Louisiana.
Mr. Harang did not file suit immediately. Instead, he calculated from May 10, 2004, the date he received notice of the decision, and determined that at least one hundred and seventeen days remained before the matter prescribed. On September 1, 2004 he filed suit against Landmark alleging that a bone scan performed on October 23, 2001 confirmed that Ms. Guillot sustained injuries during her stay at Landmark.
Landmark, on the other hand, calculated that the prescription date began to run on April 24, 2004, the day the UPS representative signed for the certified letter. Consequently, Landmark filed an exception of prescription, claiming that the deadline for filing suit was August 26, 2004.
Landmark argues that when one co-counsel is given notice of the opinion being rendered that is enough to defeat a claim that service was not effective. We note that Landmark cites no authority that authorizes an individual not employed in the attorney's office to accept the attorney's certified mail. Nor does it cite any legislation or custom that would allow a UPS postal store employee to accept a customer's certified mail.[3] Instead however, citing Trusty v. Allstate Ins. Co., 03-289, (La.App. 5 Cir. 11/12/03), 861 So.2d 634, Landmark contends that this situation is no different than when an attorney attempts to defeat service by simply refusing to retrieve his mail.
Be that as it may, there is a threshold problem that halts our determination on the merits of this matter. Neither side introduced evidence at the hearing. Although both parties refer to various correspondence and proofs of service, there is absolutely no indication that any exhibits were ever introduced into the record. The hearing was not transcribed and the minutes do not reflect any documents being introduced.
At the trial of a peremptory exception, evidence may be introduced to support or controvert the defense of prescription, if its grounds do not appear from the petition. LSA-C.C.P. art. 931. Generally, in the absence of evidence, the objection of prescription must be decided based upon the facts alleged in the petition, which must be accepted as true. Kirby v. Field, 04-1898, p. 6, (La.App. 1 Cir. 9/23/05), 923 So.2d 131, 135. writ denied, 05-2467 (La.3/24/06), 925 So.2d 1230.
The law is clear: unless prescription is evident from the face of the pleadings the party raising the peremptory exception of prescription bears the burden of proof. King v. Phelps Dunbar, L.L.P., 98-1805, p. 9 (La.6/4/99), 743 So.2d 181, 188. Here, prescription is not evident on the face of the petition. Thus, Landmark had the burden of proving that the case had prescribed. Consequently, since Landmark has not shown by any evidence, preponderance or otherwise, that the UPS employee was authorized to accept service for Ms. Rivera's correspondence or that prescription has run, the burden of proof has not been met.
After a careful review of the record, we conclude that under these specific facts, Landmark has not shown that either Ms. Rivera or Mr. Harang received notice by certified mail of the Medical Review decision.[4] *45 Accordingly, the trial court erred in sustaining the exception of prescription and the trial court judgment is reversed.
This memorandum opinion is issued in accordance with Uniform Rules  Courts of Appeal, Rule 2-16.1 B. All costs of this appeal are assessed against the defendant/appellee, LECC-Baton Rouge Inc., Louisiana Extended Care Centers, Inc., Landmark of Baton Rouge, L.L.P., et al.
REVERSED.
PETTIGREW and HUGHES, JJ., concur.
NOTES
[1] Defendants were incorrectly referred to in the petition as Landmark of Baton Rouge Nursing Home.
[2] Ms. Rivera did not formally withdraw as counsel of record in this litigation.
[3] Louisiana Civil Code article 1 provides that the sources of law are legislation and custom.
[4] We do not decide whether actual receipt of notice vitiates the requirement that notice be by certified mail to re-commence the running of prescription as provided by La. R.S. 40: 1299.47(A)(2)(a). This issue was not raised on appeal and is not before us today.