LANIER, J.
Plaintiffs appeal a judgment of the trial court sustaining defendants' exception raising the objection of prescription and dismissing plaintiffs' claims, with prejudice. For the reasons that follow, we reverse and remand for further proceedings.
This case involves a claim by plaintiffs, Lauren Pizzolato and John Pizzolato, against defendants, Terry R. Grier, Sr., his employer, Environmental Management & Training, LLC ("EMT"), and insurer, Admiral Insurance Company ("Admiral"), for personal injuries and property damage arising from alleged long-term exposure to mold and extreme moisture in their home. According to the record, plaintiffs contacted Mr. Grier, a professional engineer, in the summer of 2015 regarding a mold and moisture problem they were having in their home. Mr. Grier issued a report on July 7, 2015, recommending that plaintiffs install dehumidifiers "to correct the problem of high humidity conducive to the growth of mold." Mr. Grier advised plaintiffs to have their air condition systems checked to be sure they were functioning properly and also suggested having the slab checked because of the possibility of water being soaked up from the yard, through the slab, and into the floors. Mr. Grier further suggested that plaintiffs use Sniper and BioProtect to spot clean the mold. Mrs. Pizzolato testified that they had the slab checked, and there were no problems noted. Plaintiffs installed the dehumidifiers as recommended and continually had the dehumidifiers checked to be certain they were operating correctly.
Mr. Grier returned to the home in August 2015, after Mrs. Pizzolato emailed him to say that though things seemed to be better, they were "still seeing condensation in the home and that it still felt damp." Mr. Grier issued a second report *275 on August 12, 2015. According to Mrs. Pizzolato, Mr. Grier advised her that they needed to be patient because "things were very wet and ... it shouldn't be a problem as long as the dehumidifiers continued to function properly." Mr. Grier reassured her, stating that it was going to take a long time. Mrs. Pizzolato testified, "[Mr. Grier] was ordering more Sniper for us to continue maintaining it and I felt that that was all we needed to do, was continue to do what he said and be patient."
Mrs. Pizzolato indicated that during this time, she was pregnant with her second child and was on bedrest from November 2015 until the birth of her son in January 2016. She explained that she, her four-year old daughter, and her newborn son "had all been sick" with "[s]inus issues, breathing issues, [and] different stuff," and they were not sure what was causing their health problems. Mrs. Pizzolato stated that the humidity levels in the house remained about the same through the winter and early spring months, but that when they began using the air conditioner again more regularly in May, they started to have more concerns about the humidity becoming a problem again. She testified, however, that it was not until July that they found the mold had spread significantly to other places where there was no mold before. Plaintiffs found mold in several kitchen drawers and "[i]t spread to the other side of [the] kitchen." Noting that "it was a significant amount more on July 12, and then it seemed to just spiral from July 12 forward," Mrs. Pizzolato indicated they took their kitchen apart, took everything outside, and cleaned it."
Plaintiffs sought a second opinion from Brent Driskill of Driskill Environmental Consultants, LLC, who provided them with detailed reports of his findings on July 29 and September 15,2016. According to Mr. Driskill's findings, the home was uninhabitable and not safe for humans based on the mold spore count in the home. Plaintiffs filed suit[1] against Mr. Grier on May 4, 2017, alleging that the "professional engineering advice given to plaintiffs was negligent and below the standard of care and a cause in fact of plaintiffs' damages." Plaintiffs asserted that "the dehumidifiers not only did not correct the problem of excessively high humidity in the home but, exasperated the mold infiltration throughout the home."
Mr. Grier filed an answer generally denying the allegations of the petition and an exception raising the objection of prescription.[2] He argued that plaintiffs "had actual and/or constructive knowledge of their claim prior to April 27, 2016, and, as such, their claims [were] prescribed." Plaintiffs filed an opposition to the exception, asserting that their claims sound in contract rather than in tort and that a 10- year prescription period applies; that negligence causing long term exposure to mold is a continuing tort and, thus, prescription did not begin to run until they vacated the home in late 2016; and that contra non valentem applies because plaintiffs neither knew nor had any reason to know of Mr. Grier's tortious conduct prior to July 2016. The matter proceeded to hearing on November 20, 2017, at which time Mrs. Pizzolato testified. In written reasons for judgment issued on December 29, 2017, the trial court sustained the exception raising the objection of prescription, dismissing *276 plaintiffs' claims, with prejudice. The trial court signed a judgment on January 31, 2018, in accordance with its findings.
This appeal by plaintiffs followed. Plaintiffs argue that the trial court erred in 1) granting the prescription exception; 2) finding no evidence of a contract between the parties; 3) holding that plaintiffs' cause of action against Mr. Grier accrued before April 28, 2016; 4) holding that contra non valentem does not apply to suspend prescription of plaintiffs' cause of action; and 5) holding that Mr. Grier did not commit a continuing tort.
DISCUSSION
To meet the burden of proof on an exception raising the objection of prescription, evidence may be introduced at trial "to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." La. Code Civ. P. art. 931. However, "[e]vidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal." Denoux v. Vessel Management Services, Inc., 2007-2143 (La. 5/21/08), 983 So.2d 84, 88. Generally, in the absence of evidence, the objection of prescription must be decided based upon the facts alleged in the petition, which must be accepted as true. Kirby v. Field, 2004-1898 (La. App. 1 Cir. 9/23/05), 923 So.2d 131, 135, writ denied, 2005-2467 (La. 3/24/06), 925 So.2d 1230.
Ordinarily, the party pleading the exception of prescription bears the burden of proving the claim has prescribed. Hogg v. Chevron USA, Inc., 2009-2632 (La. 7/6/10), 45 So.3d 991, 998. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1386 (La. 1993), Thus, unless prescription is evident from the face of the pleadings, the party raising the objection of prescription bears the burden of proof. Guillot v. LECC-Baton Rouge Inc., 2005-2537 (La. App. 1 Cir. 12/28/06), 952 So.2d 42, 44. If evidence is introduced at the hearing on the peremptory exception raising the objection of prescription, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. Southern Ins. Co. v. Metal Depot, 2010-1899 (La. App. 1 Cir. 6/10/11), 70 So.3d 922, 925, writ denied, 2011-1763 (La. 10/14/11), 74 So.3d 215.
In plaintiffs' original petition for damages, Mr. Grier is named in his capacity as a professional engineer. Plaintiffs retained Mr. Grier "to provide professional engineering services on the treatment of plaintiffs' home." Although Mr. Grier denied that he performed any professional engineering services for plaintiffs, he admitted that he was a licensed professional engineer. In the signature line of the two reports submitted by Mr. Grier to plaintiffs, Mr. Grier's name appears as follows: "Terry R. Grier, Sr. P.E. CIAQP, CIEC, CMC." Moreover, Mr. Grier's attorney conceded at oral argument that the other designations, "CIAQP, CIEC, CMC," do not require state licensing; however, he acknowledged that Mr. Grier does maintain a professional engineering license in Louisiana.
Based on our review of the record evidence, we find the trial court legally erred in finding that plaintiffs' claim was subject to a one year prescriptive period. We find this to be an action against a professional engineer, which, whether based on tort or breach of contract, is subject to a five year prescriptive period as set forth in *277 La. R.S. 9:5607, which provides, in pertinent part, as follows:
A. No action for damages against any professional engineer ... whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of movable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:
....
(3) The date the person furnishing such services has completed the services with regard to actions against that person, if the person performing or furnishing the services, as described herein, does not render the services preparatory to construction, or if the person furnishes such services preparatory to construction but the person furnishing such services does not perform any inspection of the work.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The five-year period of limitation provided for in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
A review of Mr. Grier's reports reveals that the work he performed for plaintiffs included "consultation, planning ... investigation, evaluation, [and] measuring" as a professional engineer. His final inspection of the premises was on August 11, 2015. Thus, as set forth in La. R.S. 9:5607(A)(3), plaintiffs had five years from that date to file their claim against Mr. Grier, making their 2017 suit against him timely.
For the above and foregoing reasons, we reverse the trial court's January 31, 2018 judgment and remand the matter for further proceedings. We assess all costs associated with this appeal against the defendants/appellees, Terry R. Grier, Sr., Environmental Management & Training, LLC, and Admiral Insurance Company.
REVERSED AND REMANDED.
Penzato, J., concurs with reasons
PENZATO, J., concurs.
I respectfully concur with the majority and write separately to note that the single five year period of limitation for actions against professional engineers provided for in La. R.S. 9:5607 is a peremptive period, as opposed to a prescriptive period. I recognize that the Fourth Circuit has held that the one year prescriptive period for delictual actions was not displaced by the five year peremptive period of La. R.S. 9:5607. MR Pittman Group, LLC v. Plaquemines Parish Government , 2015-0396 (La. App. 4 Cir. 12/2/15), 182 So.3d 291, 297. I respectfully disagree with the Fourth Circuit's interpretation of the language of La. R.S. 9:5607, and decline to follow same. See Daigle v. Clemco Industries , 593 So.2d 1282, 1286 n.4 (La. App. 1 Cir. 1991).

Plaintiffs' original petition was fax-filed on April 28, 2017. In an amended petition filed on October 9, 2017, plaintiffs added Mr. Grier's employer, EMT, and his insurer, Admiral, as additional defendants.

EMT and Admiral joined in on the prescription exception on November 3, 2017.